No. 87,770

IN THE MATTER OF THE ESTATE OF NORMAN C. KELLER, Deceased. KAREN KELLER, Executrix, *Appellant.*

(46 P.3d 1135)

Opinion filed May 31, 2002.

*Jack D. Flesher,* of Wichita, argued the cause and *Larry E. Keenan,* of Great Bend, was with him on the brief for appellant.

The opinion of the court was delivered by

DAVIS, J.: This case presents the question of whether the provisions of K.S.A. 58-820 regarding marital deduction gifts under federal tax law and the clearly expressed intent of the testator in his last will and testament to qualify his estate for the marital deduction provide a basis for construing his will to qualify for such deduction, even though the provisions in his will fail to qualify his estate for the marital deduction.

Norman C. Keller died testate on January 5, 1999, a resident of Barton County, Kansas. His will was admitted to probate in the Barton County District Court. His surviving spouse, Karen Keller was appointed as executrix. According to the terms of Norman Keller's will, the residue of the estate was to be given to his spouse if she survived him by more than 365 days. The Internal Revenue Service (IRS) denied the estate's claim for the marital deduction because the interest passing to the surviving spouse was a "terminal interest." See 26 U.S.C. § 2056(b)(3)(A)(2000). "Terminal interest" in the context of the question we must resolve relates to the period

of time Karen Keller must survive before she was entitled to the residue of the estate.

The will as drafted provided that Karen Keller must survive Norman Keller for a period of 60 days before she became entitled to the residue of the estate. However, when executed by Norman Keller, the 60 days provisions were crossed out and initialed, and a 365-day period was inserted. Under federal law, an interest passing to the surviving spouse will qualify for the marital deduction "only if it occurs within a period not exceeding 6 months after the decedent's death." 26 U.S.C. § 2056(b)(3)(A). Thus, the estate did not qualify for the marital deduction because 365 days exceeds the 6 months provided for under federal law. The tax impact upon the decedent's estate was substantial.

The executrix filed a petition for construction of the will under K.S.A. 58-820, giving notice to all interested parties including the IRS. K.S.A. 58-820, enacted in 1994, provides for the construction of a decedent's will who has provided for a martial deduction gift in his or her will but has for some reason failed to comply with federal tax law. The statute specifically provides:

"(a) As used in this section:

(1) 'Marital deduction' means the federal estate tax deduction allowed for transfers under section 2056 of the federal internal revenue code or the federal gift tax deduction allowed for transfers under section 2523 of the federal internal revenue code; and

(2) 'marital deduction gift' means a transfer of property that is intended to qualify for the marital deduction.

"(b) If an instrument contains a marital deduction gift:

(1) The provisions of the instrument, including any power, duty, or discretionary authority given to a fiduciary, shall be construed to comply with the marital deduction provision of the federal internal revenue code;

(2) the fiduciary shall not take any action or have any power that impairs the deduction as applied to the marital deduction gift;

(3) the marital deduction gift may be satisfied only with property that qualifies for the marital deduction; and

(4) with respect to marital deduction gifts which are under the terms of the instrument, whether determined by a formula or a fixed dollar amount, in a pecuniary amount that is to be satisfied by distribution of assets at their values, as finally determined for federal estate tax purposes and the instrument does not otherwise require that such bequest at time of funding either be of an aggregate fair market value at least equal to such pecuniary amount or that the assets dis-

tributed in satisfaction of such bequest be fairly representative of appreciation or depreciation, as the case may be, of all assets available to satisfy such bequest, then such fiduciary shall be required to distribute assets in satisfaction of such marital deduction gift which are fairly representative of the depreciation or appreciation, as the case may be, of all assets available to satisfy such bequest.

"(c) The provisions of this section shall have no effect of the administration or interpretation of marital deduction gifts made prior to their effective date."

Relying upon the above provisions, together with the expressed intent of the testator, the executrix asked the district court to construe the terms of the last will and testament to provide for vesting within 6 months after the decedent's death under the following provisions of the federal tax law, 26 U.S.C. § 2056(b):

"(1) General rule. Where, on the lapse of time, on the occurrence of an event or contingency, or on the failure of an event or contingency to occur, an interest passing to the surviving spouse will terminate or fail, no deduction shall be allowed under this section with respect to such interest—

. . . .

"(3) Interest of spouse conditional on survival for limited period. For purposes of this subsection, an interest passing to the surviving spouse shall not be considered as an interest which will terminate or fail on the death of such spouse if—

"(A) such death will cause a termination or failure of such interest only if it occurs within a period not exceeding 6 months after the decedent's death, or only if it occurs as a result of a common disaster resulting in the death of the decedent and the surviving spouse, or only if it occurs in the case of either such event; and

"(B) such termination or failure does not in fact occur."

The district court heard the estate's motion for construction of the will under K.S.A. 58-820(b) and determined the matter as follows:

"7. That the decedent clearly stated in Article Fourth of his Will and again in Article Fifth of his said Will his intent that the residue of his estate, passing under Article Fifth, qualify for the federal estate tax marital deduction and that no such taxes be payable from his estate.

"8. That the decedent's Last Will and Testament should be construed to substitute 'sixty days' for '365 days' and for 'three hundred sixty-five (365) days' wherever those phrases appear in the decedent's Last Will and Testament, in accordance with Code Section 2056(b)(3) and K.S.A. 58-820(b), and in accordance with the decedent's clearly expressed intent; and that the Will, as so construed, speaks as of the date of death of the decedent.

"IT IS THEREFORE BY THE COURT CONSIDERED, ORDERED, ADJUDGED AND DECREED that the finding hereinabove made be and the same

are hereby made a part of the order and decree of this Court to the same extent as if fully set forth in this paragraph; that the decedent's Last Will and Testament is construed to substitute 'sixty days' for '365 days' and for 'three hundred sixty-five (365) days' wherever those phrases appear in the decedent's said Last Will and Testament, in accordance with Code Section 2056(b)(3) and K.S.A. 58-820(b), and in accordance with the decedent's clearly expressed intent; and that the Will, as so construed, speaks as of the date of death of the decedent."

The estate appealed to the Kansas Court of Appeals all rulings made by the district court. The Court of Appeals issued a show cause order to the estate asking for a response as to whether there existed a case or controversy and whether the appeal was appropriate because the executrix had obtained all the relief requested before the district court. The Court of Appeals cited *Blank v. Chawla,* 234 Kan. 975, 978, 678 P.2d 162 (1984), and *In re. Waterman,* 212 Kan. 826, 834, 512 P.2d 466 (1973), in its order to show cause. The case was transferred to this court on our own motion. Our jurisdiction is based upon K.S.A. 20-3018(c).

## Declaratory Judgments

The cases cited by the Court of Appeals predate the 1993 amendments to K.S.A. 60-1701 *et seq.* However, these cases provide reliable authority in this state because of the discretion vested in district and appellate courts when considering declaratory relief under K.S.A. 60-1701 *et seq.* Declaratory relief is not to be entertained for the purpose of settling abstract questions, however interesting or important to the public generally, but is limited to correct errors injuriously affecting the appellant. See *Blank,* 234 Kan. at 978. Moreover, declaratory relief is generally not available to a party unless that party has been in some way injured or aggrieved thereby. *Waterman,* 212 Kan. at 834. This court in *Johnson County Sports Authority v. Shanahan,* 210 Kan. 253, 259, 499 P.2d 1090 (1972), further explained:

"We also think it important to emphasize that the declaratory relief sought is not appropriate in this case since there is no justiciable controversy between adverse parties. It is of course horn-book law that there must be at least two parties who can assert rights which have developed or will arise against each other before an actual controversy can exist which is justiciable under our declaratory judgment act. [Citations omitted.] . . . In a declaratory judgment action there should be

suitable adverse parties so that all issues pertaining to the construction or validity of a statute may properly be raised to avoid multiplicity of litigation."

Throughout all proceedings before the district court, the Court of Appeals, and this court, notice was sent to the IRS. However, the IRS did not enter an appearance or participate in any proceedings. Absent an adverse party, the question lingers as to whether there is a case or controversy in this action. Moreover, the executrix obtained from the district court all the relief requested.

In response, the estate points to 1993 amendments regarding declaratory judgments which, among other provisions, deleted the requirement that there be an "actual controversy." See L. 1993, ch. 202, sec. 1. K.S.A. 60-1701 provides:

"Courts of record within their respective jurisdictions shall have power to declare the rights, status, and other legal relations whether or not further relief is, or could be sought. No action or proceeding shall be dismissed or stayed for the sole reason that only declaratory relief has been sought. The declaratory [action] may be either affirmative or negative in nature; and such declarations shall have the force and effect of a final judgment."

The estate emphasizes the addition of the language making the district court's declaratory judgment a final judgment. The estate also relies on the additional amendment that specifically authorizes an executor to obtain a declaration of rights to "determine any question arising in the administration of the estate or trust, including questions of construction of wills and other writings." K.S.A. 60-1706(c). Finally, the estate points to the statutory language regarding the nature of declaratory relief; *i.e.*, that the declaratory judgment act is "remedial in nature and its purpose is to settle and provide relief from uncertainty and insecurity with respect to disputed rights, status or other legal relations and should be liberally construed and administered to achieve that purpose." K.S.A. 60-1713.

The necessity for an appeal in this case is based on the United States Supreme Court's holding in *Commissioner v. Estate of Bosch*, 387 U.S. 456, 18 L. Ed. 2d 886, 87 S. Ct. 1776 (1967). *Bosch* held that the IRS and federal courts are not bound by lower state court decisions but must instead merely give those decisions

"proper regard." On matters of state law, deference is given to decisions rendered by the state's highest court. 387 U.S. at 465.

States have responded to *Bosch* by considering appeals where no adverse parties were involved and where the appellants asked the court to affirm the lower court. Massachusetts has a provision in its probate code, Mass. Gen. L. ch. 215, § 13 (1999), permitting the probate court to reserve and report a case to an appellate court for determination. See *DiCarlo v. Mazzarella,* 430 Mass. 248, 248-49, 717 N.E.2d 257 (1999). *DiCarlo* used Mass. Gen. L. ch. 215, § 13 to correct a scrivener's error, thereby satisfying the requirements of *Bosch.* 430 Mass. at 248-49. Another Massachusetts Supreme Court case, *Shawmut Bank, N.A. v. Buckley,* 422 Mass. 706, 710, 665 N.E.2d 29 (1996), held it was appropriate to decide a case on stipulated facts because a question existed whether the IRS would abide by the decision of the lower court. The Supreme Court of South Carolina in *First Union Nat. Bank of S.C. v. CISA,* 293 S.C. 456, 460, 361 S.E.2d 615 (1987), questioned whether it had a case or controversy providing jurisdiction because the "litigants appeared to be closely aligned with one another." However, the court considered the merits of the appeal since it was convinced that the "underlying purposes of the adversarial system" had been met. 293 S.C. at 461.

Based upon the 1993 amendments to K.S.A. 60-1701 *et seq.* that included specific provisions regarding the construction of wills and the above authority, we elect to consider the estate's appeal. The declaratory judgment provisions within K.S.A. 60-1701 *et seq.* are remedial in nature and specifically authorize an executor to bring a declaratory judgment action to "determine any question arising in the administration of the estate or trust, *including questions of construction of wills* and other writings." (Emphasis added.) K.S.A. 60-1706(c). Thus, we proceed to the merits of this appeal.

One critical consideration in this case involves Norman Keller's intention with regards to gifts qualifying for the marital deduction. The provisions of his last will and testament make it clear that he intended to qualify his estate for the marital deduction. As expressed in Articles Four and Five, there is no doubt that this was Norman Keller's intention:

"Fourth

"If my wife survives me for a period of at least 365 days, then I devise to her for and during the term of her life such real estate or interests therein, to be selected by my executor from the assets of my estate, the total value of which shall be equal, insofar as possible, the following amount.

"If my wife, Karen A. Keller, survives me as provided in the preceding paragraph, then I give, devise and bequeath to her a life estate interest in such real estate and/or tangible and intangible personal property, or interests therein, to be selected by my executor from the assets of my estate, the total value of which shall equal, insofar as practicable, the following amount: an amount equal to the 'exemption equivalent' as provided by the Tax Reform Act of 1976, as amended by the Economic Recovery Tax Act of 1981, as amended by the Tax Relief Act of 1997, and future amendments thereto for estates of decedents, and shall be determined as of the year of my death, which 'exemption equivalent' is $625,000.00 for 1998, and which will be increased in subsequent years, reduced, however, by such deductions therefrom as are applicable to my estate. As such 'exemption equivalent' is increased in the future, then the amount of this devise and bequest shall likewise increase. It is my absolute purpose and intention to give my wife a life estate interest in property which will not be a part of her marital deduction, in an amount which will be the maximum amount exempt from Federal Estate Taxes in my estate. I recognize that this amount will be reduced by various amounts including lifetime gifts which may utilize a portion or all thereof, jointly owned property, if any, owned by myself and persons other than my wife, Kansas Inheritance Taxes paid by my estate, debts and expenses of administration of my estate, all which I direct be paid from this portion of my property and not from any gift which qualifies for the marital deduction. If this life estate devise and bequest is calculated to cause any Federal Estate Taxes to be paid in my estate, then the amount thereof shall be decreased to the point where no taxes are payable and the rest of my property, I give, devise and bequeath to my wife as marital deduction property as provided in the following paragraphs.

"My wife is hereby vested with sole and exclusive right to lease any real estate or mineral interests which are a part of the life estate property, for oil, gas or other minerals during her lifetime, eliminating the need for execution by my remaindermen.

"Fifth

"If my wife survives me for a period of at lease 365 days, then after payment of my debts, funeral expenses, expenses of administration of my estate and Federal and Kansas Estate Taxes, if any, I give, devise and bequeath to her absolutely and forever, all of the rest, residue and remainder of my property, real and personal. *My purpose* in making the provisions in Article Fourth above is to provide that the nonmarital deduction property passing under my Will shall equal the amount of said 'exemption equivalent', which was not utilized by me in my lifetime for gifts, and which is not utilized in my estate for the transfer of property to persons

other than my wife as provided by the Tax Reform Act of 1976, and the Tax Relief Act of 1997, or future amendments thereto, without being diminished by the payment of my debts, funeral expenses, expenses of administration of my estate, Federal and Kansas Estate Taxes, *and that all of the residue of my property shall pass to my wife as marital deduction property.*" (Emphasis added.)

The above provisions establish that the decedent intended his gift of the residue of his estate to his wife to qualify for the marital deduction. In accordance with K.S.A. 58-820(b)(1), where the instrument expresses an intent to qualify for a marital deduction gift, the provisions of the instrument "shall be construed to comply with the marital deduction provisions of the federal internal revenue code." We, therefore, conclude that the district court correctly construed the marital deduction provisions of Norman Keller's last will and testament and affirm its judgment.

Affirmed.